# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ESSEX INSURANCE COMPANY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-222 (ESH) |
| ) | |
| **CAFÉ DUPONT, LLC** ) | |
| **t/a CAFÉ CITRON DC,** ) | |
| ) | |
| and ) | |
| ) | |
| **ANNETTE THURSTON LILLROSE,** ) | |
| as guardian and custodian for ) | |
| **ERIC K. THURSTON,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Essex Insurance Company ("Essex") seeks a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that it has no duty to defend or indemnify defendant Café Dupont, LLC ("Citron") in an action pending in D.C. Superior Court. Essex has now moved for summary judgment, arguing that the exclusions in Citron's insurance policy exempt Citron's claims from coverage.[1] For the reasons stated, plaintiff's motion will be granted.

## BACKGROUND

Essex first agreed to provide Citron, the operator of Café Citron, a Washington D.C. bar and nightclub, with "Commercial General Liability Coverage" from November 10, 2004, to

---

[1] Citron has opposed Essex's motion to dismiss. (Def.'s Opp'n to Pl.'s Mot.) Annette Thurston Lillrose, the plaintiff in the pending action in Superior Court, has also filed a motion in opposition, which does no more than concur in the arguments raised by Citron. (Def. Annette Thurston Lillrose's Opp'n to Pl.'s Mot.) As Lillrose does not make any separate or distinct arguments, the Court need only address Citron's arguments.

November 10, 2005.  (Pl.'s Mot., Citron 2004 Policy, Ex. A.1, at 1.)  In November 2004, Citron also purchased a separate "liquor liability" policy from another insurance company.  (Pl.'s Mot., Deposition of Sherry Fantacci ["Fantacci Dep."], Ex. B at 52-53.)  This liquor liability policy was cancelled in April 2006 and was not renewed until December 2008.  (*Id.* at 56, 61.)  Essex, however, annually renewed its agreement with Citron and continued to provide general liability coverage.  (Pl.'s Mot. at 3.)  To date, Essex has paid $190,000 in indemnity payments and $243,102 in defense fees on Citron's behalf.  (Pl.'s Reply, Decl. of C. Kyte ["Kyte Decl."], Ex. A at 1-2.)

      The Essex policy at issue in this case provided general liability coverage from November 10, 2007, to November 10, 2008.  (Pl.'s Mot., Citron Insurance Policy, Ex. A.2 [the "Policy"] at 1.)  The Policy requires Essex to "pay those sums that" defendant is "legally obligated to pay as damages" and gives Essex the "right and duty to defend the insured against any 'suit' seeking those damages."  (*Id.* at 16.)  "Where there is no coverage," however, Essex has "no duty to defend."  (*Id.* at 7.)  Even when Essex has a duty to defend, it is not responsible for paying "punitive or exemplary damages."  (*Id.* at 6.)  The Policy also excludes "any injury . . . arising out of . . . use, or entrustment to others of any 'auto'" or any "negligence or other wrongdoing in the hiring, training, placement, supervision, or monitoring of others by insured."  (*Id.* at 6.)  The Policy's "[l]iquor [l]iability" section further excludes damages or injuries that arise out of "caus[ing] or contribut[ing]" to someone becoming intoxicated, out of failing to detain anyone, and out of failing to provide transportation for intoxicated persons.  (*Id.* at 14.)

The scope of these exclusions became an issue after an early-morning car crash on January 4, 2008.[2]  After being "served" and "permitted to consume" alcoholic beverages at Citron, Rogelio Gamino left the premises, entered his car and drove off, despite being "intoxicated and/or appear[ing] to be intoxicated."  (Pl.'s Mot., Lillrose's Second Am. Compl., Ex. A.8 ["Lillrose Compl."] ¶¶ 8-10.)  Gamino, who later was found to have a blood alcohol level of .22, lost control of his car, jumped the median strip and crashed into another car head-on. (*Id.* ¶¶ 12-13.)  Eric Thurston, the driver of the other car, suffered severe injuries.  (*Id.* ¶ 16.)

Annette Thurston Lillrose, acting as guardian and custodian for Eric Thurston, brought suit in D.C. Superior Court against Citron on October 28, 2008, and filed her second amended complaint on November 5, 2009.  (Pl.'s Mot., Superior Court Docket, Ex. A.5 at 1.)  Lillrose seeks fifteen million dollars in compensatory damages, five million dollars in punitive damages, pre-judgment interests and costs from Café Citron and its employees.  (*Id.* at 13 (prayer for relief).)  On December 9, 2008, Citron submitted a claim for coverage in Lillrose's action to Essex.  (Pl.'s Mot. at 9.)

Essex filed a complaint with this Court on February 4, 2009, seeking a declaration that it had no duty to defend or indemnify Citron.  (Compl. at 14 (prayer for relief).)  The Complaint cites the "duty to defend" provision of the Policy, which states that "[w]here there is no coverage under this [P]olicy, there is no duty to defend."  (*Id.* ¶ 48.)  It refers to six different sections in the Policy and argues that each excludes the claims against Citron from coverage and relieves Essex of its duty to defend.  Specifically, it cites the liquor liability exclusion (Compl. ¶¶ 19-23), the automobile exclusion (*id.* ¶¶ 28-31), and exclusions for "criminal acts," expected or intended injuries, and injuries away from the "premises" (*id.* ¶¶ 32-37, 41-43), as well the Policy's

---

[2] For the purposes of this Memorandum Opinion, the Court accepts as true the allegations made in Annette Lillrose's complaint against Citron.

definition of "occurrence." (*Id.* ¶¶ 38-40.) The Complaint also contends that the exclusion for "negligent hiring, training and supervision" relieved Essex of any duty to defend Citron on Count III. (*Id.* ¶¶ 24-27.) Finally, plaintiff claims that the "punitive damages exclusion" bars Citron from seeking coverage for any award of punitive damages. (*Id.* ¶¶ 44-46.) On November 6, Essex moved for summary judgment, arguing that the liquor liability, automobile, "negligent hiring, training and supervision" and punitive damages exclusions applied, and therefore, it is entitled to a declaration that it has no duty to defend or indemnify defendant.[3]

## ANALYSIS

### I. INSURANCE COVERAGE

#### A. Exclusions

"[W]here [insurance] contract language is not ambiguous, summary judgment is appropriate because a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence." *Travelers Indem. Co. of Ill. v. United Food & Commercial Workers Int'l Union*, 770 A.2d 978, 985 (D.C. 2001) (quoting *Byrd v. Allstate Ins. Co.*, 622 A.2d 691, 693 (D.C. 1993)).[4] Furthermore,

> [s]ince insurance contracts are written exclusively by insurers, courts generally interpret any ambiguous provisions in a manner consistent with the reasonable expectations of the purchaser of the policy. However, when such contracts are clear and unambiguous, they will be enforced by the courts as written, so long as they do not violate a statute or public policy.

*Smalls v. State Farm Mut. Auto. Ins. Co.*, 678 A.2d 32, 35 (D.C. 1996) (internal citations and quotation marks omitted). "Whether an insurance contract is ambiguous is a question of law,"

---

[3] Essex notes that it is "in no way conceding" that the other exclusions do not "provide independent grounds for summary judgment." (Pl.'s Mot. at 4 n.3.)

[4] The parties do not dispute that District of Columbia law applies to this action. (*See* Pl.'s Mot. at 10; Def.'s Opp'n at 9-10.)

*Travelers Indem. Co. of Ill.*, 770 A.2d at 986, and "otherwise clear language in an insurance agreement is not to be deemed ambiguous 'merely because the parties do not agree' on its meaning." *Chase v. State Farm Fire & Cas. Co*, 780 A.2d 1123, 1127 (D.C. 2001) (quoting *Byrd*, 622 A.2d at 694).

The Court must resolve "[a]ny doubt as to whether there is a duty to defend . . . in favor of the insured," *Stevens*, 801 A.2d at 65, because "if it is possible that the allegations of a complaint would bring it within coverage of the policy, the insurer is obligated to defend, even if it ultimately is not required to pay a judgment." *Am. Cont'l Ins. Co. v. Pooya*, 666 A.2d 1193, 1198 (D.C. 1995). An insurer seeking to apply an exclusion must therefore "establish that the exclusion is stated in clear and unmistakable language" and "applies to the particular case." *Richardson v. Nationwide Mut. Ins. Co.*, 826 A.2d 310, 324-25 (D.C. 2003) (vacated pursuant to settlement)[5] (quoting *Cont'l Cas. Co. v. Rapid-American Corp.*, 609 N.E.2d 506, 512 (N.Y. 1993)); *see also Chase*, 780 A.2d at 1127. An insurer must affirmatively show that its construction is the only fair one, and that the insured's proposed construction of the language is "altogether unreasonable." *Richardson*, 826 A.2d at 324-25 (emphasis omitted).

### B. Liquor Liability Exclusion

Plaintiff argues that the Policy's liquor liability exclusion absolves it of its duty to indemnify Café Citron. (Pl.'s Mot. at 10-16.) To determine whether Essex has a duty to defend Citron, the Court applies the "eight corners" rule, which considers only "the four corners of the complaint to determine the scope of the allegations and . . . the four corners of the relevant policy

---

[5] The D.C. Court of Appeals granted rehearing *en banc* in *Richardson*, 832 A.2d 752 (D.C. 2003), but never reached a decision and ultimately vacated the decision pursuant to a settlement. *See* 844 A.2d 344 (D.C. 2004). Thus, *Richardson* has no precedential value. However, because defendant cites it without objection from plaintiff, the Court has referred to it, since it is relevant and instructive.

to determine the scope of coverage." *Am. Registry of Pathology v. Ohio Cas. Ins. Co.*, 461 F. Supp. 2d 61, 66 (D.D.C. 2006) (citing *Stevens v. United Gen. Title Ins. Co.*, 801 A.2d 61, 63 (D.C. 2002) ("We also reaffirm our adherence to the traditional 'eight corners' rule . . . .")).

### 1. Four corners of the complaint

Lillrose's amended complaint divides the allegations against Citron into two separate counts. Count II of the complaint alleges that defendant failed to "control, monitor and/or limit the serving and consumption of alcoholic beverages" and thereby failed to prevent Gamino from becoming intoxicated.[6] (Lillrose Compl. ¶¶ 17(a), 19(f).) Count II also alleges that Citron failed to "protect, enhance and/or promote public safety, and protect the public . . . from foreseeable risk of injury or harm" and failed to "prevent the type of collision which is the subject of this action." (*Id.* ¶¶ 17(b)-(c).) In other words, by allowing Gamino to leave the bar, Citron failed to "prevent[] the foreseeable risk of injury or harm" that he presented. (*See id.* ¶¶ 19(a)-(e).) Count II further alleges that Citron failed to "follow, implement and/or enforce their existing and pre-existing consumer protection and monitoring program[,] . . . their system of management of persons who become negligently intoxicated," their "public safety system," and any "post-consumption methodologies or intervention technologies to prevent a person . . . from operating a motor vehicle." (*Id.* ¶¶ 19(g)-(k).) Count III of the complaint alleges that defendant violated its duty to "reasonably hire, train, supervise and retain" employees and to "reasonably ensure its employees comply with . . . statutes and regulations . . . so as not to permit the consumption of an alcoholic beverage by an intoxicated person." (*Id.* ¶ 25.)

---

[6] Count I of the complaint is a personal injury claim seeking damages, interest, and costs from Rogelio Gamino, and is not relevant to the issue of the scope of Essex's coverage of Citron.

### 2. Four corners of the Policy

The liquor liability exclusion states that the Policy does not cover "any injury, loss or damage arising out of": A) "[c]ausing or contributing to the intoxication of any person"; B) providing alcohol to "anyone under legal drinking age or under the influence of alcohol"; C) "[a]ny statute, ordinance or regulation relating to sales, gift, distribution or use of alcoholic beverages"; "and/or" D) "[a]ny act or omission" by the insured or "any employee of any insured" that "respects providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol[.]" (*Id.* at 14.) Plaintiff argues that section A excludes those claims that stem from negligently serving Gamino alcohol and that section D excludes the claims that stem from negligently allowing him to leave the bar while intoxicated. (Pl.'s Mot. at 10-14.)

### 3. Claims related to serving alcohol

Section A of the liquor liability exclusion excludes any "injury, loss or damage arising" from "[c]ausing or contributing to the intoxication of any person[.]" (*Id.*) Plaintiff argues that "causing Gamino's intoxication" is the "basis" of all of Lillrose's claims against Citron and that it is therefore relieved of its duty to defend Citron. (Pl.'s Mot. at 11.) The Court of Appeals has held that language identical to section A "plainly covered" claims alleging "negligent provision of drinks" to someone who was obviously intoxicated and claims alleging negligent hiring, training and supervision of those who served the drinks. *Interstate Fire & Cas. Co. v. 1218 Wisc., Inc.*, 136 F.3d 830, 833 (D.C. Cir. 1998). Thus, to the extent Lillrose's claims allege that defendant negligently served Gamino or that defendant negligently hired, trained and supervised

its employees, they are plainly excluded. Any other interpretation would be "altogether unreasonable." *Richardson*, 826 A.2d at 324.

Defendant argues that Essex must defend it against Lillrose's claim that it negligently retained its employees because the Policy does not explicitly exclude negligent retention claims, but is limited to "alleged negligence or other wrongdoing in the hiring, training, placement, supervision, or monitoring of others." (Def.'s Opp'n at 12.) The Court need not determine whether this exclusion applies, because the liquor liability exclusion applies to claims that defendant's negligent employment practices caused or contributed to intoxication. *See Interstate Fire*, 136 F.3d at 833 (identical exclusion "plainly covered" claim alleging "negligent hiring, training, and supervision of those who served . . . excessive amounts of alcohol"). Although *Interstate Fire* did not explicitly hold that the exclusion at issue applied to negligent retention, there is no reasonable basis for treating negligent retention differently from negligent "hiring, training, or supervision." *See id.* The Policy plainly exempts from coverage any injuries resulting from Citron's "causing or contributing to the intoxication of any person." *Id.* Whether styled as negligent hiring, training, supervision, or retention is irrelevant, since Lillrose's claim is based on Citron's employees causing or contributing to Gamino's intoxication and is therefore excluded from coverage.

### 4. Claims unrelated to serving alcohol

Plaintiff argues that any remaining claims not based on serving alcohol are barred by section D of the liquor liability exclusion. (Def.'s Mot. at 13-14; Def.'s Reply at 3-5.) Lillrose has alleged that Citron did not abide by its existing policies and did not carry out its duty to protect the public when it failed to detain Gamino or provide him with alternative transportation. (*See* Compl. ¶¶ 17, 19.) Essex argues that section D of the Policy clearly excludes all of

Lillrose's remaining claims (Pl.'s Mot. at 13-14), because it excludes "any injury, loss or damage arising out of" "failing to provide transportation, detaining or failing to detain any person, or any act of . . . not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol." (Policy at 14.) Thus, to the extent Lillrose's claims are not "contingent on" the provision of alcohol, section D excludes them because they are "contingent on" defendant's failure to detain Gamino or provide him with transportation. *See Interstate Fire*, 136 F.3d at 833.

Defendant argues that section D only applies to injuries "to the person under or suspected to be under the influence of alcohol." (Def.'s Opp'n at 14.) This is an altogether unreasonable interpretation of the Policy. Although the exclusion only covers failures to "provide transportation . . . detain anyone . . . or . . . assum[e] . . . responsibility for the well being" of an intoxicated person, it applies to "*any* injury, loss or damage" that might arise as a result.[7] (Policy at 14 (emphasis added).) The Court will not "seek out ambiguity" in the Policy "where none exists." *Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166, 1172 (D.C. Cir. 2003) (citing *Med. Serv. of Dist. of Col. v. Llewellyn*, 208 A.2d 734, 736 (D.C. 1965)). The exclusion clearly applies to "any injury, loss or damage" that arises out of the specified conduct, and is not limited to injuries to the person under the influence of alcohol.

Defendant also argues that because "it is possible" the complaint seeks damages from Citron for conduct unrelated to serving alcohol, the liquor liability exclusion should not apply. (Def.'s Opp'n at 15.) Defendant suggests that Lillrose's claims that Citron failed to abide by its

---

[7] This appears to be what Essex's representative was trying to say in his deposition. (*See* Def.'s Opp'n, Deposition of Essex, Ex. E at 129-30 ("[I]t applies to the insured and his employee . . . if they're in fault or they're failing to provide some kind of . . . [t]o the person under the influence"). *See also* Pl.'s Reply at 4 n.4.) More importantly, the testimony of Essex's representative is irrelevant, because whether the Policy is ambiguous is a question of law. *Travelers Indem. Co. of Ill.*, 770 A.2d at 986.

"consumer protection and monitoring program" and that it was negligent simply because it allowed Gamino to leave while intoxicated are unrelated to providing alcohol. *Id.* (quoting Lillrose Compl. ¶ 19(g)). It cites to *Interstate Fire*, which held that a liquor liability exclusion did not apply to a claim that security personnel at a bar had failed to protect plaintiff from an attack by an intoxicated patron, because the claim was not "contingent on" providing alcohol. (*Id.* at 16 (citing *Interstate Fire*, 136 F.3d at 835).) However, the exclusion in *Interstate Fire* did not contain language similar to section D of the liquor liability exclusion. *Compare* 136 F.3d at 835 *with* Policy at 14. Section D clearly applies to injuries arising out of a failure to detain anyone or to provide transportation for *any* intoxicated person, not merely those who become intoxicated at Citron.[8] Thus, the remainder of Lillrose's claims are "plainly covered by the terms of the liquor liability exclusion" because they are "contingent on" Citron's failure to detain or provide transportation for Gamino. *Interstate Fire*, 136 F.3d at 833.

As the Court "finds that the liquor liability exclusion in the commercial general liability policy" applies to all of Lillrose's claims, it "declines to address defendant's additional argument[] that . . . the policy's exclusion of punitive . . . damages bar[s] coverage for [an] award of punitive damages." *Mitzan v. W. Heritage Ins. Co.*, 623 F. Supp. 2d 993, 998 (E.D. Mo. 2009).[9]

---

[8] As all of Lillrose's claims fall under the liquor liability exception, the Court need not consider plaintiff's argument that the automobile and negligent employment exceptions apply. (Pl.'s Mot. at 16-20.)

[9] In addition, defendant failed to respond to plaintiff's argument regarding punitive damages, so the Court will treat it as conceded. *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (concluding that the court may treat as conceded any arguments raised in a dispositive motion that the plaintiff fails to address in his opposition).

**II.  VIOLATION OF A STATUTE OR PUBLIC POLICY**

As a fallback position, defendant argues that the Court should not enforce the language of the Policy because it violates District law and public policy.  (Def.'s Opp'n at 19-22.)  Under District law, a "clear and unambiguous" contract will not be enforced as written if it "violate[s] a statute or public policy."  *Smalls*, 678 A.2d at 35 (internal quotation marks omitted).  Defendant first argues that the Court should not enforce the exclusions to the Policy because they violate D.C. law, suggesting that the Policy "virtually eliminates any coverage . . . under any reasonable expected circumstance."  (Def.'s Opp'n at 19.)  It argues that Essex violated D.C. Code § 31-2231.03, which forbids "[m]isrepresentations and false advertising of insurance policies," by marketing and selling a "General Liability" policy that does not offer "general" coverage.

The section of the Code cited by defendant states that no person "shall make, issue, circulate, or cause to be made, issued or circulated, an estimate, illustration, circular or statement, sales presentation, omission, or comparison" that either "misrepresents" the policy terms or uses a "name or title" that misrepresents the policy.  D.C. Code § 31-2231.03.  The statute thus only applies to advertising.  It does not forbid actually *selling* a policy with a misleading name, so long as the name is not a part of an "estimate, illustration, circular or statement, sales presentation, omission, or comparison."  *See id.*  Nor does the statute suggest that a policy with an arguably misleading name is unenforceable as a matter of law.  Moreover, defendant does not allege that Essex used a misleading name or title in an "estimate, illustration, circular or statement, sales presentation, omission, or comparison."  Nor do the facts suggest that defendant was somehow misled by the title of the policy, as it carried a separate liquor liability policy for two years.  In any case, even assuming that titling the Policy "Commercial General Liability Coverage" in some way misrepresented its scope, the Policy still would be enforceable.

Defendant also suggests that the Court should not enforce the exclusions because they render coverage "illusory" and are therefore against public policy. (Def.'s Opp'n at 21-22.) In support of this somewhat novel argument, defendant relies on only one case – *Monticello Insurance Co. v. Mike's Speedway Lounge, Inc.*, which interprets Indiana law. 949 F. Supp. 694 (S.D. Ind. 1996). In Indiana, "an insurance policy that provides only illusory coverage will be enforced so as to give effect to the reasonable expectation of the insured." *Id.* at 702. Indiana courts define coverage as "illusory where the likelihood of coverage [is] considered 'sufficiently remote[.]'" *Id.* at 701 (citing *Meridian Mut. Ins. Co. v. Richie*, 540 N.E.2d 27, 30 (Ind. 1989)). The *Monticello* court found that an insurance policy that excluded "bodily injury [or] property damage, arising out of or in connection with the manufacturing, selling, distributing, serving or furnishing of any alcoholic beverages" was illusory because the phrase "in connection with . . . distributing, serving or furnishing" alcoholic beverages would rule out nearly any potential claim. *Id.* at 696, 702 (internal quotations omitted). Defendant suggests that the Policy's liquor liability exclusion is similarly broad and is therefore against public policy.

Even if Indiana law applied here, which it does not, the Policy would not be "illusory." The court in *Monticello* found coverage illusory because the policy excluded any harm that arose "in connection with" serving alcoholic beverages. *Id.* at 701-02. The court reasoned that this would exclude damage to anyone who happened to be in the bar at any point, whether or not they were drinking. *Id.* at 702. Essex's liquor liability exclusion lacks this broad sweep. It does not exclude all damage that occurs in connection with serving alcoholic beverages. Rather, it generally applies where the bar serves alcohol to those who are already intoxicated. At its broadest, it excludes damages arising from failures to "detain" or "provide transportation for" anyone. (Policy at 14.) This does not exclude "virtually any claim the insured might reasonably

be expected to file." *Monticello*, 949 F. Supp. at 702.  Indeed, as noted above, Essex has paid out over $430,000 to defend and indemnify Citron since 2004.  (Kyte Decl. at 1-2.)  As the Policy does "not include an exclusion comparable to the absolute liquor exclusion that the *Monticello* court determined was illusory . . . there is no basis for refusing to apply the unambiguous terms of the liquor liability exclusion." *Mitzan*, 623 F. Supp. 2d at 998.  Thus, even under Indiana law, the exclusions to the Policy would not make it illusory.[10]

### III.  DEFENDANT'S RULE 56(f) STATEMENT

Citron also has submitted a "Rule 56(f) Statement" that asks the Court to allow it to complete a deposition of Essex's corporate designee before issuing any ruling in this case.  In support of this request, Citron suggests only that completing the deposition "may add genuine facts to [its] position."  (Def.'s Rule 56(f) Statement at 2.)  However, Rule 56(f) requires the moving party to provide "specific reasons demonstrating the necessity and utility of discovery to enable [it] to fend off summary judgment."  *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989).  Defendant has not even attempted to satisfy this requirement.  Its motion is simply "too vague to require the district court to defer or deny dispositive action."  *Id.* (emphasis omitted).  Moreover, there can be no justification for discovery of further evidence, since the Court's role is limited to interpreting Lillrose's complaint and the Policy.  The Court will therefore deny defendant's request for further discovery.

---

[10] District law appears to define "illusory" policies far more restrictively.  A court will not strike a provision unless it is "unconscionable" and renders the coverage "non-existent or *de minimis*." *See Chase*, 780 A.2d at 1131.  Even if Essex's liquor liability provision excludes conduct that one might normally expect to be covered, it does not render the coverage *de minimis*, and would not be unconscionable under District law.  *See Flecha de Lima v. Int'l Med. Group, Inc.*, No. 01-CA-6866, 2004 WL 2745654, at *2 (D.C. Super. Ct. Nov. 29, 2004) (although "questions might justifiably be raised regarding a 'health insurance' policy that excludes from coverage weight reduction procedures that are in fact vital to a particular insured's health," those questions did not permit the court to invalidate terms that were "clear and unambiguous").

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment will be granted.[11]

An Order consistent with this Memorandum Opinion is also being issued this date.

/s/

ELLEN SEGAL HUVELLE
United States District Judge

Date: December 16, 2009

---

[11] The Court will therefore deny as moot plaintiff's motion to modify the scheduling order to extend the deadline for discovery. (Pl.'s Mot. for Limited Modification of the Scheduling Order [Dkt. 21].)